## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

TAMMY LOCKWOOD                          :
611 North Railroad Street               :
Tamaqua, PA 18252                       :        CIVIL ACTION
                                        :
              Plaintiff,                :        No. _____
       v.                               :
                                        :
MUY BRANDS, LLC *d/b/a* TACO BELL       :
565 Susquehanna Blvd.                   :        **JURY TRIAL DEMANDED**
Hazelton, PA 18202                      :
                                        :
              Defendant.                :
                                        :

### CIVIL ACTION COMPLAINT

Plaintiff, by and through her undersigned counsel, hereby avers as follows:

### INTRODUCTION

1.      This action has been initiated by Tammy Lockwood (*hereinafter* referred to as "Plaintiff," unless indicated otherwise) against Muy Brands, LLC *d/b/a* Taco Bell (*hereinafter* referred to as "Defendant") for violations of the Americans with Disabilities Act ("ADA" - 42 USC §§ 12101 *et seq.*), the Pennsylvania Human Relations Act ("PHRA"),[1] and Pennsylvania common law. As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

### JURISDICTION AND VENUE

2.      This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal laws.

---

[1] Plaintiff's claim under the PHRA is referenced herein for notice purposes. She is required to wait 1 full year before initiating a lawsuit from date of dual-filing with the EEOC. Plaintiff must however file her lawsuit in advance of same because of the date of issuance of her federal right-to-sue letter under the ADA. Plaintiff's PHRA claims however will mirror identically her federal claims under the ADA.

3.     This Court may properly assert personal jurisdiction over Defendant because its contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945), and its progeny.

4.     Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because Defendant is deemed to reside where it is subjected to personal jurisdiction, rendering Defendant a resident of the Middle District of Pennsylvania.

5.     Plaintiff is proceeding herein (in part) under the ADA after properly exhausting all administrative remedies with respect to such claims by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and by filing the instant lawsuit within ninety ("90") days of receiving a notice of dismissal and/or right to sue letter from the EEOC.

## PARTIES

6.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7.     Plaintiff is an adult individual, with an address as set forth in the caption.

8.     Muy Brands, LLC *d/b/a* Taco Bell is one of the largest franchise restaurant owners in the United States operating several Taco Bell fast-food franchises in multiple states (including Pennsylvania).  Plaintiff was hired through and worked at the Taco Bell franchise restaurant located at the address as set forth in the caption.

9.     At all times relevant herein, Defendant acted by and through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

## FACTUAL BACKGROUND

10.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

11.     Plaintiff was employed by Defendant from in or about 2013 until her unlawful termination (as discussed *infra*) on or about October 22, 2018, as an Assistant General Manager in Defendant's Taco Bell franchise located at 565 Susquehanna Boulevard, Hazelton, Pennsylvania.

12.     Plaintiff was generally supervised by Area Coach, Diedre Cueves (*hereinafter* "Cueves") and General Manager, Tanya Tremmel (*hereinafter* "Tremmel").

13.     Plaintiff has and continues to suffer from disabilities, including but not limited to an anxiety disorder (and other complications).

14.     As a result of her aforesaid health conditions, Plaintiff suffers from panic-attacks, fear, and sleeplessness, which (at times) limit her ability to perform some daily life activities, including but not limited to public speaking, focusing, and working (among other daily life activities).

15.     Despite her aforementioned health conditions and limitations, Plaintiff was still able to perform the essential duties of her job well with Defendant.

16.     In May of 2018, Plaintiff informed Defendant's management, including but not limited to Cueves and Tremmel, that she had been diagnosed with anxiety and suffered panic attacks, which required medication.

17.     Plaintiff was treated poorly by Defendant's management, including but not limited to Cueves and Tremmel, shortly after informing them of her aforesaid health conditions.

18.     For example, in or about June of 2018, Plaintiff was informed by Cueves and Tremmel that she would need to give an oral presentation in front of all the employees at the Taco

3

Bell franchise location in Hazelton, Pennsylvania. Plaintiff informed Cueves and Tremmel that public presentations severely aggravated her anxiety and induced panic attacks, and that she was not comfortable with giving the presentation.

19.     In response to Plaintiff's concerns that the aforesaid oral presentation would aggravate her anxiety and possibly induce a panic attack, Cueves and Tremmel callously advised Plaintiff that it was a required duty for all managers, and that if she did not give the presentation, she would be terminated.

20.     Because Plaintiff was afraid of losing her job with Defendant, she gave the oral presentation required by Defendant's management, but suffered severe anxiety and panic while giving the presentation.

21.     Upon Plaintiff's information and belief, at least four other non-disabled shift managers were not required to do oral presentations and were not threatened with termination or terminated.

22.     In or about late September/early October of 2018, Respondent hired a new Assistant General Manager in training, Anthony DeSpirto (*hereinafter* "DeSpirto"), who was transferred to the Hazelton, Pennsylvania Taco Bell location.

23.     On or about the evening of October 18, 2018, Plaintiff was the only manager on duty at Defendant's Hazelton Taco Bell restaurant when DeSpirto and a new employee, Moses Chez (*hereinafter* "Chez") arrived to complete paperwork in the employee office behind the front counter. Neither DeSpirto nor Chez were in Taco Bell uniforms or non-slip shoes.

24.     Plaintiff had been informed on multiple occasions by Cueves that no employees were permitted behind the counter without a uniform or non-slip shoes (for safety reasons), as it is

4

considered a violation of Taco Bell policy and, if a Taco Bell auditor were to visit the franchise[2] and witness an employee behind the counter without a uniform or non-slip shoes, the franchise would be assessed points, thereby negatively affecting its performance rating.

25.     In fact, Plaintiff had visited the Hazelton franchise location on several occasions while off-duty and not in uniform, and she was not permitted to go behind the counter to the employee area.

26.     Because Plaintiff was the only manager on duty on October 18, 2018, and she was concerned for the safety of her direct reports, as well as DeSpirto and Chez, she followed DeSpirto and Chez into the employee office and informed them that they were not permitted to be in the employee area without a Taco Bell uniform and the requisite safety footwear.

27.     In response to Plaintiff informing DeSpirto and Chez that they were not permitted to be in the employee area without a Taco Bell uniform and the requisite safety footwear as per Cueves and Taco Bell's policies, DeSpirto told Plaintiff to "go away" and forcefully shoved an office chair into Plaintiff's stomach.

28.     As a result of DeSpirto forcefully shoving the office chair into Plaintiff's stomach, she felt immediate sharp pain to her abdomen.

29.     When DeSpirto attempted to shove the office chair into Plaintiff for a second time, she blocked the chair and immediately left the office area.

30.     DeSpirto's egregious conduct of forcefully pushing the office chair into Plaintiff's stomach exacerbated Plaintiff's anxiety, causing her to cry and suffer a panic attack.

---

[2] Audits were conducted randomly at the franchise.

31.     Immediately following the aforesaid work-related injury to Plaintiff's stomach (*see* Paragraphs 27 -30), Plaintiff called Cueves to advise her of the incident and that she was having a panic attack.

32.     In response to Plaintiff informing Cueves that she had suffered a work-related injury to her stomach and resulting panic attack, Cueves blamed Plaintiff for the incident and condescendingly advised her to "go outside, have a cigarette (Plaintiff does not smoke), and calm yourself down."

33.     Additionally, Cueves directed Plaintiff to fax her statements from Plaintiff and any employees on-duty that evening regarding DeSpirto's conduct and Plaintiff's resulting work-related injury (*see* Paragraphs 27-30), which Plaintiff did.

34.     After faxing the aforesaid incident statements (*see* Paragraph 33) to Cueves, Plaintiff finished the remaining hour of her shift, while experiencing stomach pain, and then went home.

35.     After Plaintiff went home, her stomach pain continued, and she experienced swelling and bruising.

36.     Plaintiff texted both Cueves and Tremmel throughout the evening on October 18, 2018, to apprise them of the status of her work-related injury, but her texts were largely ignored.

37.     On or about October 19, 2018, Plaintiff texted Cueves a picture of her stomach bruising and swelling and informed Cueves that she was still feeling pain as a result of her aforesaid work-related injury.

38.     A few hours after Plaintiff sent Cueves a text of her bruised and swollen stomach, Cueves responded that Plaintiff needed to fill out an incident report (which Plaintiff had already completed) and seek treatment from Defendant's worker's compensation physicians through MedCore.

39.     Shortly after Cueves advised Plaintiff to seek treatment from Defendant's worker's compensation physicians, Plaintiff contacted MedCore to file a worker's compensation claim and was referred to Schuylkill Medical Center in Pottsville, Pennsylvania.

40.     Thereafter, Plaintiff was evaluated by a physician at Schuylkill Medical Center and diagnosed with abdominal trauma and internal bruising, but cleared to return to full-duty work that day without limitations.

41.     Shortly after being evaluated by a physician at Schuylkill Medical Center, Plaintiff informed both Tremmel and Cueves of the status of her work-related injury, and that her injury had aggravated her serious health condition (anxiety) such that she was experiencing panic attacks at the thought of coming to work that evening for her shift because she did not feel safe if DeSpirto would also be working at the Hazelton Taco Bell franchise that evening (October 19, 2018); however, Tremmel informed Plaintiff that DeSpirto would be working elsewhere.

42.     Plaintiff also contacted Defendant's Human Resources and Corporate offices to inform them of DeSpirto's conduct on October 18, 2018, her resulting work-related injury, and the results of the evaluation by Defendant's worker's compensation physician, but neither office ever responded.

43.     Plaintiff arrived for and worked her entire shift on the evening of October 19, 2018, without incident but experienced abdominal pain as a result of her aforesaid work-related injury.

44.     On or about October 20, 2018, Plaintiff was not scheduled to work, but continued to reach out to Cueves, expressing her fear of working with DeSpirto in the future and inquiring as to whether the incident had been addressed, but Cueves did not respond.

45.     On or about October 21, 2018, because Plaintiff had still not received a response to her concerns from Cueves (*see* Paragraph 44), Plaintiff emailed Vice President of Operations, Steve Gebhardt (*hereinafter* "Gebhardt"), informing him of the October 18, 2018 incident, which

resulted in her aforesaid work-related injury, and that she feared for her safety if she had to work with DeSpirto.

46.     In addition to informing Gebhardt of the October 18, 2018 incident, which resulted in Plaintiff's aforesaid work-related injury, Plaintiff also advised him that the incident had aggravated her serious health conditions (anxiety), causing her panic attacks, and difficulty with sleeping and focusing at work.

47.     In response to Plaintiff's October 21, 2018 email (*see* Paragraphs 45 and 46), Gebhardt largely blamed Plaintiff for her allegedly "unacceptable behavior" (but said nothing about DeSpirto's behavior) and ignored her safety and health concerns.

48.     On or about October 22, 2018, after texting Cueves to ask her if she should come in to work that day, Plaintiff was advised by Cueves via telephone that in reference to Gebhardt's email, she was being terminated for making false accusations, even though Defendant's worker's compensation physician confirmed that Plaintiff had been subjected to abdominal trauma.

49.     Upon Plaintiff's information and belief, DeSpirto was not disciplined for the October 18, 2018 incident and is still working for Defendant.

50.     Upon Plaintiff's further information and belief, DeSpirto does not have a disability and has not filed a worker's compensation claim.

51.     Plaintiff believes and therefore avers that she was terminated due to (1) her known and/or perceived disabilities; (2) her record of impairment; and (3) in retaliation for seeking worker's compensation benefits.

## COUNT I
### Violations of the Americans with Disabilities Act, as Amended ("ADA")
### (Actual/Perceived/Record of Disability Discrimination)

52.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

8

53.     Plaintiff suffered from qualifying health conditions under the ADA which affected her ability (at times) to perform some daily life activities including, but not limited to public speaking, focusing, and working.

54.     Plaintiff was treated poorly by Defendant's management shortly after informing them of her aforesaid health conditions.

55.     On or about October 18, 2018, Plaintiff suffered a work-related injury which exacerbated her serious health conditions.

56.     Plaintiff kept Defendant's management informed of her work-related injury/serious health conditions and need for medical treatment.

57.     Plaintiff was terminated shortly after informing Defendant's management of her serious health conditions and work-related injury which exacerbated her serious health conditions.

58.     Plaintiff believes and therefore avers that she was terminated by Defendant due to (1) her known and/or perceived disabilities; and (2) her record of impairment.

59.     These actions as aforesaid constitute violations of the ADA.

### COUNT II
### Common-Law Wrongful Discharge
### (Public Policy Violation)

60.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

61.     Upon information and belief, Plaintiff was terminated in substantial part for making a claim for worker's compensation benefits and/or seeking worker's compensation benefits and/or for her work-related injuries (as discussed *supra*).

62.     It is against Pennsylvania's public policy for an employee to be terminated for making a worker's compensation claim and/or seeking worker's compensation benefits. These actions as aforesaid constitute wrongful termination in Pennsylvania. *See Shick v. Shirey,* 552 Pa.

590, 716 A.2d 1231 (1997); *Rothrock v. Rothrock Motor Sales, Inc.*, 584 Pa. 297, 883 A.2d 511, 516 (2005).

63.     The temporal proximity and retaliatory animus between Plaintiff's claim for worker's compensation and her termination creates an inference that her termination was in retaliation for making such a claim.

64.     These actions as aforesaid constitute wrongful termination in Pennsylvania.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.     Defendant is to promulgate and adhere to a policy prohibiting discrimination in the future against any employee(s);

B.     Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary pay increases, bonuses, insurance, benefits, training, promotions, reinstatement and seniority;

C.     Plaintiff is to be awarded punitive damages as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

D.     Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper and appropriate (including but not limited to damages for emotional distress, pain, suffering and humiliation); and

E.     Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: _____

Ari R. Karpf, Esq.
3331 Street Road
Two Greenwood Square, Suite 128
Bensalem, PA 19020
(215) 639-0801

Dated: June 5, 2019